IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONOMA COUNTY ASSOCIATION OF RETIRED EMPLOYEES,<br><br>        Plaintiff,<br><br>  v.<br><br>SONOMA COUNTY,<br><br>        Defendant.<br>_____/ | No. 09-04432 CW<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |

    This case concerns whether members of the Sonoma County Association of Retired Employees (SCARE) have a vested right to retiree health benefit contributions.  Sonoma County (Sonoma) moves to dismiss SCARE's complaint, arguing that the thirteen causes of action fail to state a claim because SCARE has not identified any specific County resolution or ordinance that granted its members this purported vested right.  SCARE opposes the motion.  Having considered all of the papers filed by the parties, the Court grants Sonoma's motion with leave to amend.

BACKGROUND

    The following allegations are taken from SCARE's complaint. Plaintiff SCARE is an unincorporated non-profit organization that seeks to promote and protect the welfare and interests of retired

employees of Sonoma County. SCARE has over 1400 members. Defendant Sonoma County maintains a health care benefits system for current and retired Sonoma County employees through a self-funded plan and contracts with third parties.

Since at least 1964, Sonoma "promised to continue to pay all or substantially all of the cost of post-retirement health care benefits for its employees and their dependents" under a system that pooled retirees and their dependents with active employees. Compl. ¶ 15. Because health care for older individuals generally costs more than health care for younger individuals, pooling the two groups together would keep the cost of retiree health care benefits down compared to insuring retirees as a separate group.

The "promise" to pay all or substantially all of the cost of post-retirement health care benefits "did not contain any limitation on the duration of such benefits." Id. at ¶ 16. "Retirees accepted these benefits in lieu of other benefits, such as a cost of living adjustment in their pensions." Id. The promises were "written, implied and conveyed in the following ways:

> The Board of Supervisors orally conveyed the County's promises to the County administrators, who in turn orally conveyed the County's promises to employees. Many of the County administrators responsible for receiving and conveying these promises are members of SCARE and will testify to the oral promises they personally received from the Board of Supervisors and relayed to employees on behalf of the County.
>
> The County conveyed its promises in writing in numerous Board of Supervisors' resolutions, ordinances, salary resolutions, job announcements, job offers, retirement-related documents, and other County-issued documents.
>
> The County's promises were implied by the decades of County conduct in conformance with these promises.

2

> The County's promises were implied by the County's provision of the same health care coverage, at the same cost, to Retirees as it provided to active management employees, who generally received the best coverage of the County's employees.

Id. at ¶ 17(a)-(d). These promises "created one or more legally binding contracts." Id. at ¶ 22.

In 1985, Sonoma changed the County Health Plan to require retirees to pay deductibles and co-pays; however, Sonoma continued to pay 100% of the premium costs of the County Health Plan and it "promised that, going forward, in perpetuity, Retirees and their dependents would receive the same health benefits, and the County would pay the same amount, as provided to and paid for the active management employees and their dependents . . . ." Id. at ¶ 18. This agreement was known as the "tie" agreement.[1] Id. The promises concerning the "tie" agreement were "written, implied, and conveyed orally" in many of the same ways as the County's promise to pay all or substantially all of post-retirement health care benefits described above. Id. at ¶ 12(a)-(c). These promises also "created one or more legally binding contracts." Id. at ¶ 24. Beginning in 1990, Sonoma conditioned retiree health care benefits on either ten or twenty years of County service, depending on whether the retiree sought benefits for a dependent or not.

On August 19, 2008, the County Board of Supervisors voted to change Sonoma's contribution for health care premiums to a flat monthly amount of up to $500 per month for unrepresented active employees, administrative management, the Board of Supervisors and

---

[1] SCARE pleads the 1985 "tie" agreement as an alternative theory of liability.

3

all retirees. The change would become effective on June 2, 2009, with a five-year phase-in period for retirees. On September 16, 2008, the Board passed a resolution that awarded a $600 cash allowance per month to all individuals affected by the $500 flat monthly contribution to medical benefits premiums except the county retirees. Thus, active employees receive $1100 a month, and, after five years, retirees will receive $500 a month.

SCARE alleges that these changes will have a devastating impact on retirees because many of them live on limited fixed incomes and will be unable to afford the additional hundreds of dollars a month to pay for their health benefits premiums. SCARE asserts the following causes of action: breach of contract, breach of the covenant of good faith and fair dealing, impairment of contract under the California and United States Constitutions, promissory estoppel and violation of their due process rights under the California and United States Constitutions. SCARE seeks declaratory and injunctive relief and attorneys' fees for each of its claims.

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim,

4

the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. Id. at 296-97.

DISCUSSION

I.   Contract Claims

Sonoma argues that SCARE's breach of contract claims and its impairment of contract clause claims fail because it has not

5

alleged that a contract was established between the parties. In the context of public employment, the contract must be a resolution or ordinance formally enacted by a majority of the members of the Board of Supervisors. Cal. Gov't Code § 25300; County of Sonoma v. Superior Court, 173 Cal. App. 4th 322, 345 (2009). Although SCARE alleges that the contractual rights at issue are set forth in resolutions and ordinances, it does not identify the specific resolutions or ordinances that form such a contract. This type of specificity is required before the Court will allow Plaintiff to proceed on its claims.

SCARE also alleges that Sonoma conveyed a set of promises over the years to the retirees in writing, orally, and as applied through practice. Compl. ¶¶ 17, 21. However, SCARE has not cited any cases that establish that oral and other extrinsic evidence can, by itself, contractually bind Sonoma to provide retirees medical benefits. This type of evidence could be probative of the scope of the promises allegedly made by county resolution and ordinance. See Dimon v. County of Los Angeles, 166 Cal. App. 4th 1276, 1284-85 (2008); Sappington v. Orange County Unified School District, 119 Cal. App. 4th 949, 954-55 (2004); Glendale City Employees' Assn., Inc. v. City of Glendale, 15 Cal. 3d 328, 339-40 (1975).

SCARE also fails to allege a breach of the implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing acts as a "supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the

6

agreement." Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 36 (1995) (citations omitted). "Absent [a] contractual right, however, the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings.'" Id.  Because SCARE has not plead the existence of an express contract to pay retirees health benefits, it has not adequately stated a claim for breach of the implied covenant of good faith and fair dealing.

Accordingly, the Court dismisses SCARE's contract claims. If SCARE can amend its complaint adequately to plead a breach of contract claim, it may also be able to plead a breach of the covenant of good faith and fair dealing claim.

The Court notes that SCARE plead two alternative theories of breach of contract: that Sonoma breached (1) the agreement to pay all or substantially all of the cost of retiree health care and (2) the "tie" agreement. Sonoma argues that these theories are "in fundamental conflict." Opposition at 5. Even if these theories are in conflict, SCARE may plead alternative theories of liability in its complaint. See Fed. R. Civ. P. 8(d)(2)-(3).

II. Promissory Estoppel Claim

To state a claim for promissory estoppel, SCARE must allege "(1) a clear promise, (2) reliance, (3) substantial detriment and (4) damages." Toscano v. Greene Music, 124 Cal. App. 4th 685, 692 (2004). "'[E]stoppel will not be applied against the government if to do so would effectively nullify a strong rule of policy, adopted for the benefit of the public.'" Poway Royal Mobilhome Owners Ass'n v. City of Poway, 149 Cal. App. 4th 1460, 1471 (2007)(quoting

7

City of Long Beach v. Mansell, 3 Cal. 3d 462, 493 (1970)). California courts "have been careful to apply the rules of estoppel against a public agency only in those special cases where the interests of justice clearly require it." City of Long Beach v. Mansell, 3 Cal. 3d 462, 495 n.30 (1970).

As noted above, SCARE has not presented any resolution or ordinance that memorializes an alleged promise to pay retiree health care benefits. SCARE cites no authority to support the application of the promissory estoppel doctrine to vaguely described oral promises made by a Board of Supervisors. SCARE claims that county retirees reasonably and detrimentally relied on this promise by (1) accepting employment with Sonoma County, (2) remaining employed by Sonoma county, (3) continuing to receive Sonoma County's health care benefits rather than those that might have been available to them through their spouse's employers, (4) foregoing other benefits in lieu of retiree health benefits and (5) moving to geographical locations that had access to Sonoma County's Health Care Plan. However, "persons dealing with a public agency are presumed to know the law with respect to any agency's authority to contract." Katsura v. City of San Buenaventura, 155 Cal. App. 4th 104, 109 (2007); see also G.L. Mezzetta, Inc. v. Ciyt of American Canyon, 78 Cal. App. 4th 1087, 1092 (2000). Thus, SCARE members, which include all former County Human Resources Directors from 1973 to 2005, are presumed to know how Sonoma County can contractually bind itself. Therefore, as plead, SCARE has not alleged reasonable reliance.

Moreover, it is not clear that applying estoppel in this case

8

1 would not nullify a strong rule of policy, adopted for the benefit
2 of the public.  SCARE correctly asserts that an important policy at
3 issue is the preservation of retirement benefits promised to public
4 employees.  See e.g., Longshore v. County of Ventura, 25 Cal. 3d
5 14, 28 (1979) (noting that estoppel is applied in the "usual
6 pension situation" because of "the unique importance of pension
7 rights to an employee's well-being," which meant that "the
8 potential injustice to employees or their dependents clearly
9 outweighed any adverse effects on established public policy").
10 However, there is a competing policy at issue of saving taxpayers
11 money and maintaining funding for other needed programs in times of
12 budget crisis.

13      Further, SCARE's reliance on Mansell is not persuasive.
14 Mansell involved long-standing and complicated boundary disputes
15 that affected thousands of people who lived in the Alamitos Bay
16 area in California.  Because a variety of factors "cast a cloud" on
17 the title to this land, the legislature attempted to resolve the
18 disputes by disclaiming state and other public interests in ceratin
19 tidelands.  Mansell, 3 Cal. 3d at 467.  The city manager and city
20 clerk refused to carry out the legislation on the ground that it
21 violated constitutional and common law prohibitions against the
22 alienation of state-owned tidelands.  The city and state raised an
23 equitable estoppel argument against themselves.  They argued that
24 they should be estopped from claiming paramount title because the
25 city had exercised full municipal jurisdiction over the land since
26 1923 by granting building permits, approving subdivision maps,
27 constructing and maintaining streets and services and collecting

9

taxes. The Mansell court concluded that application of the estoppel doctrine would not have a deleterious effect on the public policy of ensuring public ownership of tidelands because the development in the area that had already taken place "has resulted in an area providing an impressive array of public facilities for navigation and recreation." Id. at 500. The court cautioned that the estoppel issue arose in a "peculiar context" and "similarly compelling circumstances will not often recur." Id. It also stated that, with this case, it intended to "create an extremely narrow precedent for application in future cases." Id. Here, Sonoma did not raise the estoppel doctrine against itself, and application of the doctrine could have deleterious effects.

Finally, "promissory estoppel may not be raised against a public entity when it would defeat the public policy of requiring adherence to statutory procedures for entering into contracts." Poway, 149 Cal. App. 4th at 165; see e.g., Seymour v. State of California, 156 Cal. App. 3d 200, 204 (1984); State of California v. Haslett Co., 45 Cal. App. 3d 252, 257-58 (1975); Santa Monica Unified Sch. Dist. v. Persh, 5 Cal. App. 3d 945, 953 (1970). As noted above, the law requires contracts regarding public employment to be made through resolution or ordinance. Cal. Gov't Code § 25300. Without sufficient allegations of the existence of such a resolution or ordinance, estoppel is unavailable against Sonoma to enforce an alleged oral promise. Therefore, the Court concludes that SCARE has not sufficiently plead the elements of a promissory estoppel claim.

III. Due Process Claims

"To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." Nunez v. City of Los Angeles, 147 F.3d 867, 871 (9th Cir. 1998). Property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Board of Regents v. Roth, 408 U.S. 564, 577 (1972).

SCARE cannot establish any protected property interest in retiree health benefits because it has not adequately alleged a statutory or vested benefit. SCARE has not adequately plead that the retirees and Sonoma mutually agreed to binding contracts with specific levels of health care benefits. Therefore, the Court dismisses SCARE's due process claims with leave to amend.

//
//
//
//
//
//
//
//
//
//
//

11

CONCLUSION

For the foregoing reasons, the Court grants Sonoma's motion to dismiss. Docket No. 13. Pursuant to the schedule to which the parties stipulated on May 5, 2010, Plaintiff may file any amended complaint no later than July 6, 2010. If Sonoma wishes to file a motion to dismiss, it must do so by July 27, 2010. SCARE's opposition will be due August 10, 2010 and Sonoma's reply will be due August 17, 2010. The matter will be taken under submission on the papers. A further case management conference will be held on September 14, 2010.

IT IS SO ORDERED.

Dated: 05/14/10

CLAUDIA WILKEN
United States District Judge

12