IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONOMA COUNTY ASS'N OF RETIRED EMPLOYEES,<br><br>    Plaintiff,<br><br>  v.<br><br>SONOMA COUNTY,<br><br>    Defendant.<br>_____/ | No. C 09-4432 CW<br><br>ORDER GRANTING MOTION FOR RECONSIDERATION AND CLARIFYING RULING<br><br>(Docket No. 142) |

Plaintiff Sonoma County Association of Retired Employees (SCARE) seeks reconsideration of this Court's January 10, 2014 Order Granting in Part Defendant's Motion to Dismiss (Docket No. 96). Defendant Sonoma County opposes the motion. Having considered the papers submitted, the Court GRANTS the motion.

BACKGROUND

SCARE is a nonprofit mutual benefit corporation that "promotes and protects the welfare and interests of the retired employees of Sonoma County." Docket No. 75, SCARE's Second Amended Complaint (2AC) ¶ 11. Roughly fourteen hundred Sonoma County retirees currently claim membership in the organization. Id. ¶ 12.

The County has subsidized its retirees' healthcare benefits since at least 1964. Id. ¶ 14. In August 2008, the County's Board of Supervisors enacted a resolution capping its healthcare benefit contributions at the flat amount of $500 per month for all retirees as well as for certain active employees. Id. ¶ 32. The County planned to phase in this new cap over a five-year period

beginning in June 2009.  Id.  To assist active employees adversely affected by the new cap, the County enacted a resolution in September 2008 providing active employees with an additional $600 monthly cash allowance for healthcare costs.  Id. ¶¶ 33-34. Retirees were not provided the same benefit.  Thus, at the conclusion of the five-year phase-in period, active employees would be receiving $1,100 per month from the County in healthcare benefits while retirees would be receiving only $500 per month.

SCARE brought this action in September 2009, alleging that the County's new cap on healthcare benefit contributions would harm many retirees by forcing them to pay significantly higher healthcare premiums while living on a fixed income.  In its complaint, SCARE asserted that the new cap constituted a breach of the County's longstanding agreement to pay for its retirees' healthcare benefits costs in perpetuity.  SCARE offered two alternative theories to explain how and when the County entered into such an agreement.  First, it alleged that the County made a series of promises, dating back to at least 1964, to pay "all or substantially all" of the costs of healthcare benefits for its retirees and their dependents.  Second, SCARE alleged that the County entered into a "tie agreement" in or around 1985 under which it promised to provide its retirees and their dependents with the same level of healthcare benefits that it provided to active management employees.  SCARE contends that the County subsequently entered into contracts in which the tie agreement was an explicit or implied term.  The County denied that it had made a binding promise to provide post-retirement healthcare benefits in perpetuity under either theory of contract formation.

In May 2010, this Court granted, with leave to amend, the County's motion to dismiss SCARE's complaint. Docket No. 34 (Sonoma I). The Court explained that, under California law, municipal governments could only create express contracts for public employment by means of an ordinance or resolution and SCARE had failed to identify in its complaint any such ordinances or resolutions promising lifetime healthcare benefits to retirees.

In July 2010, SCARE filed an amended complaint in which it sought to cure this deficiency by adding new factual allegations to support its claims. Docket No. 35. SCARE attached to its amended complaint sixty-eight exhibits which consisted of various resolutions, ordinances, and memoranda of understanding (MOUs) signed by County representatives. According to SCARE, these documents, taken together, established a binding promise by the County to provide healthcare benefits to all retirees in perpetuity.

In November 2010, this Court once again dismissed SCARE's complaint, this time without leave to amend. Docket No. 51 (Sonoma II). After reviewing the amended complaint, the Court found that none of the new factual allegations or various resolutions, ordinances, and MOUs attached to the complaint supported SCARE's claim that the County entered into a binding contract to provide post-retirement healthcare benefits in perpetuity. The Court explained that, while the resolutions and ordinances evidenced the County's longstanding practice of paying all or substantially all of the costs of retirees' healthcare benefits, they did not contain an express promise that the County would continue to do so in perpetuity. Furthermore, the Court

3

1  noted, none of the attached resolutions or ordinances explicitly
2  adopted the alleged 1985 tie agreement and none of the MOUs
3  contained durational language suggesting that they were meant to
4  confer rights in perpetuity.  Thus, because SCARE had failed to
5  identify a binding promise on which its contract claims were based
6  despite a second opportunity to do so, the Court dismissed its
7  complaint with prejudice.  SCARE filed an appeal the following
8  month.

9      While that appeal was pending, the California Supreme Court
10 issued its opinion in <u>Retired Employees Association of Orange</u>
11 <u>County, Inc. v. County of Orange</u>, 52 Cal. 4th 1171 (2011) (<u>REAOC</u>
12 <u>II</u>).  That opinion addressed "[w]hether, as a matter of California
13 law, a California county and its employees can form an implied
14 contract that confers vested rights to health benefits on retired
15 county employees."  <u>Id.</u> at 1176.  The Ninth Circuit had certified
16 this question to the California Supreme Court in a case where a
17 county government sought to reduce its contributions to its
18 retired employees' healthcare benefit plans.  <u>See</u> <u>Retired Emps.</u>
19 <u>Ass'n of Orange Cnty. Inc. v. County of Orange</u>, 610 F.3d 1099 (9th
20 Cir. 2010).  In <u>REAOC II</u>, the California Supreme Court answered
21 the certified question by holding that "a vested right to health
22 benefits for retired county employees can be implied under certain
23 circumstances from a county ordinance or resolution."  52 Cal. 4th
24 at 1194.

25     In February 2013, the Ninth Circuit vacated this Court's
26 November 2010 order of dismissal.  <u>SCARE v. Sonoma County</u>, 708
27 F.3d 1109, 1119 (9th Cir. 2013) (<u>Sonoma III</u>).  Although the court
28 of appeals agreed that SCARE's first amended complaint failed to

4

1  state a claim, it held that SCARE should be granted leave to amend
2  in order to plead that, under REAOC II, the County made an implied
3  promise to provide post-retirement healthcare benefits.  Id.  The
4  Ninth Circuit explained, "The district court did not have the
5  benefit of REAOC II, but in light of its clarification that a
6  public entity in California can be bound by an implied term in a
7  written contract under specified circumstances, we cannot say that
8  the Association's amendment of its complaint a second time would
9  be futile."  Id.  It therefore remanded the action "for
10 proceedings consistent with REAOC II."  Id.

11     The Ninth Circuit noted that under REAOC II in order to
12 survive a motion to dismiss, SCARE's complaint would have to
13 "allege that the County: (1) entered into a contract that included
14 implied terms providing healthcare benefits to retirees that
15 vested for perpetuity; and (2) created that contract by ordinance
16 or resolution."  Id. at 1115-16 (citing REAOC II, 52 Cal. 4th at
17 1176).  The Court found that SCARE's amended complaint and the
18 attached MOUs met the first requirement, but that SCARE must also
19 identify a resolution or ordinance that plausibly ratified the
20 MOUs to fulfill the second prong of the REAOC II test.  Id.  This
21 would be accomplished if the text of the resolutions or ordinances
22 and the circumstances surrounding their passage "clearly evince"
23 an intent to grant vested benefits or "contain [] an unambiguous
24 element of exchange of consideration by a private party for
25 consideration offered by the state."  Id.

26     SCARE filed its Second Amended Complaint (2AC) in May 2013.
27 It attached twenty-six new resolutions and asserted that these
28 resolutions -- along with the sixty-eight resolutions, ordinances,

5

and MOUs attached to its previous complaint -- evinced the "County's clear intent to bind itself to contracts with the Retirees to provide post-retirement healthcare benefits." 2AC ¶ 19. The County once again filed a motion to dismiss for failure to state a claim and lack of subject matter jurisdiction. The County argued, among other things, that because the newly added resolutions only adopted MOUs beginning in 1990, they could not support a contract claim for pre-1990 retirees or a tie agreement argument based on a 1985 agreement. On January 10, 2014, the Court granted the motion in part, dismissing all claims on behalf of non-union retirees and those hired before 1990. Docket No. 96. The Court found that while the newly added resolutions contain language expressly adopting the MOUs highlighted in the Ninth Circuit's opinion, they only govern agreements between the County and local unions and only with respect to employees hired after 1990. Id. In addition, the Court precluded Plaintiff from proceeding on any claims based on the alleged 1985 tie agreement, reasoning that SCARE had failed to identify a specific ordinance or resolution creating that contract. Id.

Plaintiff now moves for reconsideration of the dismissal of claims on behalf of retirees hired before 1990 who worked under post-1989 MOUs. SCARE also requests that the Court clarify the scope of its ruling dismissing all claims based on the 1985 tie agreement.

LEGAL STANDARD

Where a court's ruling has not resulted in a final judgment or order, reconsideration of the ruling may be sought under Rule 54(b) of the Federal Rules of Civil Procedure. Courts have

6

typically considered motions for reconsideration under Rule 54(b) in light of the standards for reconsideration under Rules 59(3) and 60(b). See, e.g., Awala v. Roberts, 2007 WL 1655823, at *1 (N.D. Cal.). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). Motions for reconsideration should only be granted in extraordinary circumstances. See, Twentieth Century-Fox Film Corp. v. Dunnahoo, 637 F.2d 1338, 1341 (9th Cir. 1981).

## DISCUSSION

SCARE's motion addresses two aspects of this Court's January 10 order. First, SCARE seeks reconsideration of the dismissal of claims brought on behalf of retirees hired before 1990 who worked under post-1989 MOUs. SCARE argues that reconsideration is warranted because (1) the Court incorrectly interpreted Sonoma III and the text of the MOUs in determining which retirees had a right to healthcare benefits, and (2) new evidence supports SCARE's contention that the MOUs apply to retirees hired before 1990 who worked under post-1989 MOUs. Second, SCARE seeks clarification of the portion of the order dismissing claims based on an alleged 1985 tie agreement. If the order prohibits the argument that retiree benefits are tied to the benefits of active employees, then SCARE seeks leave to move for reconsideration of that point.

I. Dismissal of Claims Pertaining to Pre-1990 Hires

SCARE first asks the Court to reconsider the dismissal of its claims brought on behalf of retirees hired before 1990 who worked under post-1989 MOUs. The earliest MOUs enacted by resolution were agreed upon in 1989 and went into effect in 1990. See 2AC, Ex. 38, Docket No. 76. In 1990, the County imposed new restrictions on retiree healthcare benefits for employees hired from that day forth. The issue upon reconsideration is whether the MOUs impose a promise to pay retiree healthcare benefits only for post-1990 hires or for pre-1990 hires as well. Pursuant to the Sonoma III test, the MOUs only need to include "plausibly" implied terms providing healthcare benefits to retirees hired before 1990.

SCARE contends that the Court incorrectly relied on the Ninth Circuit's decision in Sonoma III in making its determination. The January 10 order found that the Ninth Circuit "expressly recognized" that only employees hired after 1990 plausibly have a contractual right to retiree healthcare benefits. Docket No. 96 at 18. However, SCARE maintains that Sonoma III only referred to retirees hired after 1990 as an example of how the MOUs submitted supported the Association's allegation that the MOUs promised healthcare benefits. In applying the first prong of the REAOC II test, the Ninth Circuit noted that the MOUs attached to the 2AC "state, among other things, that the County will make contributions toward a health plan premium for retirees hired after 1990 who had worked for the county. . . " Sonoma III, 708 F.3d at 1116. The January 10 order interpreted this language to mean that the MOUs only covered retirees hired after 1990;

8

however, the inclusion of the phrase "among other things" suggests that the Ninth Circuit did not intend to provide a comprehensive account of all retirees guaranteed healthcare benefits under the MOUs. Id.

SCARE notes that there is no other point in Sonoma III where the Ninth Circuit stated that SCARE had not set forth a claim on behalf of pre-1990 hires. In fact, the Ninth Circuit cited MOU language later in the opinion that suggests that pre-1990 hires are entitled to the same retiree medical benefits as post-1990 hires. See id. at 1116 n.3 (citing MOU language providing that the County will provide post-1990 hires with benefits "in the same manner and on the same basis as is done at the time for other retirees who were hired or rehired before July 1, 1990."). SCARE also notes that neither party distinguished between pre- and post-1990 hires in their briefs. After reviewing the Ninth Circuit opinion, this Court agrees that Sonoma III does not foreclose a plausible claim for pre-1990 hires who worked under the 1989 MOUs.

SCARE provides further support for its contention that the MOUs govern the rights of employees hired before and after 1990. SCARE explains that the distinction between pre- and post-1990 hires found in the MOUs is only for the purpose of setting new restrictions on eligibility for post-1990 hires. SCARE has also submitted new testimony and documentary evidence to support this point. Since the Court's January 10 order, the County has produced over 500,000 pages of discovery documents, which, SCARE contends, demonstrate the bargaining parties' intent to provide pre-1990 hires, after retirement, with medical benefits at least as favorable as post-1990 hires. In addition, the parties have

9

taken the depositions of fifteen witnesses since the January 10 order, in which witnesses testified that the MOUs were not intended to preclude pre-1990 hires from retiree medical benefits. In fact, multiple witnesses stated that the intent was to make eligibility requirements more stringent for post-1990 hires. The new evidence submitted in SCARE's motion for reconsideration sheds further light on the MOUs and resolutions attached to the 2AC.

There are two ways in which the MOUs and resolutions attached to the 2AC discuss retirees hired before 1990. In the first subset, MOUs refer to the County's current practice of providing retiree healthcare benefits for pre-1990 hires. For example, the Sonoma County Law Enforcement Managers Association 2003-09 MOU provides, "Currently, the County contributes to the cost of a health plan for its retirees and their dependents." Ex. 29 at 33. The MOU discusses the 1990 hire date only as a point when new eligibility restrictions were put in place. Id.

The second way in which pre-1990 hires are addressed in the MOUs and resolutions is in reference to the coverage of post-1990 hires. For example, one MOU provides, "In no event shall employees hired or rehired after January 1, 1990 be entitled to receive greater contributions from the County for a health plan upon retirement than the County pays for employees hired or rehired before January 1, 1990 upon their retirement." See, e.g., 2AC Ex. 38 at 65, Docket No. 76. SCARE contends that this language reflects an intent to limit the benefits of post-1990 hires, not to grant them greater benefits than those hired before that date. Furthermore, SCARE argues that these MOUs explicitly link benefits for post-1990 hires to those of pre-1990 hires

10

suggesting that both types of retirees are entitled to the same benefits.  See 1AC Ex. 4 Salary Ordinance No. 1905, ¶ 15.4 ("For any employee newly hired or rehired by the County . . . the County shall contribute for the retiree only the same amount towards a health plan premium as it contributes to an active single employee in the same manner and on the same basis as is done at the time for other retirees who were hired or rehired before January 1, 1990.")(emphasis omitted).  While none of the MOUs include explicit mandatory language committing the County to provide healthcare benefits for retirees hired before 1990, the decision to include the practice in MOUs ratified by resolution and to link the benefits of retirees hired post-1990 to those of retirees hired before 1990 supports that SCARE sufficiently alleges that the County intended to promise healthcare benefits for retirees hired before 1990.

The new evidence further supports SCARE's contention that the MOUs created a promise on behalf of the County to continue its practice of paying retiree healthcare benefits for pre-1990 hires. For example, Ray Myers, who was employee relations manager for the County, testified that the 1989 MOU with the Service Employees International Union represented "a commitment forward by the county with regard to current employees and retirees."  Ray Myers Dep. 103:1-6.  Mr. Myers also testified that the County only made changes to retiree healthcare benefits for new hires because it considered benefits to have vested from day one of employment. Id. at 289:22-25, 290:5-22.  This deposition testimony suggests that the County did intend for the 1989 MOUs to confer rights to healthcare benefits on current employees and supports SCARE's

11

contention that it has stated a plausible claim with respect to pre-1990 hires.

Taking into account the MOUs attached to the 2AC and the new evidence attached to SCARE's motion for reconsideration, the Court finds that SCARE has plausibly stated a claim with respect to pre-1990 hires who worked under post-1989 MOUs. Accordingly, SCARE's motion for reconsideration is GRANTED. The January 10 order is hereby vacated and the Court will enter an amended order permitting SCARE to proceed with its claims on behalf of pre-1990 hires who worked under post-1989 MOUs.

II. Clarification Regarding the Tie Agreement

SCARE also requests clarification on the scope of the January 10 order with respect to the alleged 1985 tie agreement. Specifically, SCARE questions whether the order precludes claims demonstrating any tie agreement or only the 1985 tie agreement. If the order precludes SCARE from arguing the existence of any tie agreement, it requests leave to file a motion for reconsideration on that point.

The 2AC alleges that in or around 1985 the County agreed to link retirees to the active administration management employee group for the purposes of health benefits. SCARE refers to this agreement as the "tie agreement" because it ties retiree healthcare benefits to those of active employees. The 2AC cites a number of resolutions and MOUs in which the text explicitly ties retiree healthcare benefits to those of active employees. See, e.g., Salary Resolution No. 95-0926, 2AC, Ex. 7 (" . . . the County shall contribute for the retiree only the same amount towards a health plan premium as it contributes to an active

12

single employee in the same manner and on the same basis as is done at the time for other retirees who were hired or rehired before January 1, 1990.").

In seeking to proceed with its tie agreement claim, SCARE now clarifies that its claim is not based solely on the 1985 agreement, for which there is no specific corresponding MOU. Rather, its claim relies on the subsequent MOUs ratified by resolutions that explicitly refer to the tying of retiree healthcare benefits to those of active employees.

The January 10 order dismissed SCARE's theory of contract formation based on an "alleged 1985 tie agreement," because SCARE failed to attach to its 2AC a resolution enacted prior to 1990. Docket No. 19. This limitation does not preclude SCARE from proceeding on a tie agreement claim that is based on promises implied in the post-1989 MOUs enacted by resolution.

The County argues that SCARE is judicially estopped from claiming that post-1989 MOUs and resolutions adopting them constitute the source of the alleged tie agreement. However, a close reading of the 2AC makes clear that SCARE did not base its tie agreement claim solely on the alleged 1985 agreement. The 2AC states that the "promise to pay Retirees' health care benefits under the tie agreement was an explicit term of some of the contracts . . . and an implied term of the remainder." 2AC ¶ 30. Insofar as those terms are alleged to be part of a contract enacted by resolution, SCARE may proceed with its tie agreement claims.

13

CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion for reconsideration and clarification (Docket No. 142). The Court hereby vacates its January 10 order (Docket No. 96) and will enter an amended order. Pursuant to the amended order, SCARE may proceed with its claims on behalf of pre-1990 retirees who worked under the post-1989 MOUs. The Court also clarifies that it has not dismissed SCARE's tie agreement theory except insofar as it relies only on an alleged 1985 agreement.

IT IS SO ORDERED.

Dated: 04/22/2015

CLAUDIA WILKEN
United States District Judge

14