IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONOMA COUNTY ASS'N OF RETIRED EMPLOYEES, | No. C 09-4432 CW |
| Plaintiff, | AMENDED ORDER GRANTING IN PART MOTION TO DISMISS (Docket No. 77) |
| v. | |
| SONOMA COUNTY, | |
| Defendant. | |

_____/

Defendant Sonoma County moves to dismiss the second amended complaint (2AC) for lack of subject matter jurisdiction and failure to state a claim.  Plaintiff Sonoma County Association of Retired Employees (SCARE) opposes the motion.  After considering the parties' submissions and oral argument, the Court grants the motion in part and denies it in part.

BACKGROUND

The following facts are alleged in the 2AC.

SCARE is a nonprofit mutual benefit corporation that "promotes and protects the welfare and interests of the retired employees of Sonoma County."  Docket No. 75, 2AC ¶ 11.  Roughly fourteen hundred Sonoma County retirees currently claim membership in the organization.  Id. ¶ 12.

The County has subsidized its retirees' healthcare benefits since at least 1964.  Id. ¶ 14.  In August 2008, the County's Board of Supervisors enacted a resolution capping its healthcare benefit contributions at the flat amount of $500 per month for all retirees as well as for certain active employees.  Id. ¶ 32.  The

United States District Court
For the Northern District of California

County planned to phase in this new cap over a five-year period beginning in June 2009.  Id.  To assist active employees adversely affected by the new cap, the County enacted a resolution in September 2008 providing active employees with an additional $600 monthly cash allowance for healthcare costs.  Id. ¶¶ 33-34. Retirees were not provided the same benefit.  Thus, at the conclusion of the five-year phase-in period, active employees would be receiving $1,100 per month from the County in healthcare benefits while retirees would be receiving only $500 per month.

SCARE brought this action in September 2009, alleging that the County's new cap on healthcare benefit contributions would harm many retirees by forcing them to pay significantly higher healthcare premiums while living on a fixed income.  In its complaint, SCARE asserted that the new cap constituted a breach of the County's longstanding agreement to pay for its retirees' healthcare benefits costs in perpetuity.  SCARE offered two alternative theories to explain how and when the County entered into such an agreement.  First, it alleged that the County made a series of promises, dating back to at least 1964, to pay "all or substantially all" of the costs of healthcare benefits for its retirees and their dependents.  Second, SCARE alleged that the County entered into a "tie agreement" in 1985 under which it promised to provide its retirees and their dependents with the same level of healthcare benefits that it provided to active management employees.  The County denied that it had made a binding promise to provide post-retirement healthcare benefits in perpetuity under either theory of contract formation.

United States District Court
For the Northern District of California

In May 2010, this Court granted, with leave to amend, the County's motion to dismiss SCARE's complaint.  Docket No. 34 (Sonoma I).  The Court explained that, under California law, municipal governments could only create express contracts for public employment by means of an ordinance or resolution and SCARE had failed to identify in its complaint any such ordinances or resolutions promising healthcare benefits to retirees.

In July 2010, SCARE filed an amended complaint in which it sought to cure this deficiency by adding new factual allegations to support its claims.  Docket No. 35.  SCARE also attached sixty-eight exhibits to its amended complaint which consisted of various resolutions, ordinances, and memoranda of understanding (MOUs) signed by County representatives.  According to SCARE, these documents, taken together, established a binding promise by the County to provide healthcare benefits to all retirees in perpetuity.

In November 2010, this Court once again dismissed SCARE's complaint, this time without leave to amend.  Docket No. 51 (Sonoma II).  After reviewing the amended complaint, the Court found that none of the new factual allegations or various resolutions, ordinances, and MOUs attached to the complaint supported SCARE's claim that the County entered into a binding contract to provide post-retirement healthcare benefits in perpetuity.  The Court explained that, while the resolutions and ordinances evidenced the County's longstanding practice of paying all or substantially all of the costs of retirees' healthcare benefits, they did not contain an express promise that the County would continue to do so in perpetuity.  Furthermore, the Court

3

United States District Court
For the Northern District of California

noted, none of the attached resolutions or ordinances explicitly adopted the alleged 1985 "tie agreement" and none of the MOUs contained durational language suggesting that they were meant to confer rights in perpetuity.  Thus, because SCARE had failed to identify a binding promise on which its contract claims were based despite a second opportunity to do so, the Court dismissed its complaint with prejudice.  SCARE filed an appeal the following month.

While that appeal was pending, the California Supreme Court issued its opinion in Retired Employees Association of Orange County, Inc. v. County of Orange, 52 Cal. 4th 1171 (2011) (REAOC II).[1]  That opinion addressed "[w]hether, as a matter of California law, a California county and its employees can form an implied contract that confers vested rights to health benefits on retired county employees."  Id. at 1176.  The Ninth Circuit had certified this question to the California Supreme Court in a case where a county government sought to reduce its contributions to its retired employees' healthcare benefit plans.  See Retired Emps. Ass'n of Orange Cnty. Inc. v. County of Orange, 610 F.3d 1099 (9th Cir. 2010) (REAOC I).  In REAOC II, the California Supreme Court answered the certified question by holding that "a vested right to health benefits for retired county employees can be implied under certain circumstances from a county ordinance or resolution."  52 Cal. 4th at 1194.

---

[1] This order refers to the opinions in both the REAOC and the Sonoma lines of cases using the same case names employed by both the parties and the Ninth Circuit in this action.

United States District Court
For the Northern District of California

In February 2013, the Ninth Circuit vacated this Court's November 2010 order of dismissal.  SCARE v. Sonoma County, 708 F.3d 1109, 1119 (9th Cir. 2013) (Sonoma III).  Although the court of appeals agreed that SCARE's first amended complaint failed to state a claim, it held that SCARE should be granted leave to amend in order to plead that, under REAOC II, the County made an implied promise to provide post-retirement healthcare benefits.  Id.  The Ninth Circuit explained, "The district court did not have the benefit of REAOC II, but in light of its clarification that a public entity in California can be bound by an implied term in a written contract under specified circumstances, we cannot say that the Association's amendment of its complaint a second time would be futile."  Id.  It therefore remanded the action "for proceedings consistent with REAOC II."  Id.

SCARE filed its 2AC in May 2013.  It attached twenty-six new resolutions to the 2AC and asserted that these resolutions -- along with the sixty-eight resolutions, ordinances, and MOUs attached to its previous complaint -- evinced the "County's clear intent to bind itself to contracts with the Retirees to provide post-retirement healthcare benefits."  2AC ¶ 19.  Although SCARE made a handful of minor changes to the text of its complaint, the twenty-six newly added resolutions constituted the principal substantive amendment to its earlier complaint.

In June 2013, the County filed the instant motion to dismiss.

DISCUSSION

I.   Subject Matter Jurisdiction

     A.   Legal Standard

     Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case.  Federal subject matter jurisdiction must exist at the time the action is commenced.  Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988).  A federal court is presumed to lack subject matter jurisdiction until the contrary affirmatively appears.  Stock W., Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

     Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim. Fed. R. Civ. P. 12(b)(1).  A Rule 12(b)(1) motion may either attack the sufficiency of the pleadings to establish federal jurisdiction, or allege an actual lack of jurisdiction which exists despite the formal sufficiency of the complaint.  Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987).

     B.   Associational Standing

     The County contends that the Court lacks subject matter jurisdiction over this action because SCARE has failed to establish that it has standing to bring suit on behalf of its members.[2]

---

     [2] Although the County failed to raise this issue previously, both in its prior motions and on appeal, this failure does not bar its standing argument here because a "litigant generally may raise a court's

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    The standing requirement derives from Article III, section 2

2  of the United States Constitution, which "confines the judicial

3  power of federal courts to deciding actual 'Cases' or

4  'Controversies.'" Hollingsworth v. Perry, 133 S. Ct. 2652, 2661

5  (2013) (quoting U.S. Const. art III, § 2).  An organization

6  seeking to bring suit on behalf of its members must establish that

7  it has "associational standing" by showing that "(1) at least one

8  of its members would have standing to sue in his own right,

9  (2) the interests the suit seeks to vindicate are germane to the

10 organization's purpose, and (3) neither the claim asserted nor the

11 relief requested requires the participation of individual members

12 in the lawsuit." Fleck & Associates, Inc. v. City of Phoenix, 471

13 F.3d 1100, 1105-06 (9th Cir. 2006) (citing United Food &

14 Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S.

15 544, 553 (1996)).  While the first two prongs of this test arise

16 directly from Article III, "the third prong of the associational

17 standing test is best seen as focusing on [] matters of

18 administrative convenience and efficiency, not on elements of a

19 case or controversy within the meaning of the Constitution."

20 United Food, 517 U.S. at 557.

21    Here, the County contends that SCARE has failed to meet the

22 third prong of this test because it seeks monetary damages rather

23 than purely injunctive or declaratory relief.  According to the

24 County, these damages claims will ultimately necessitate the

25 participation of SCARE's individual members in this lawsuit.  For

26 support, the County cites a handful of cases where district courts

27

28 lack of subject-matter jurisdiction at any time." Kontrick v. Ryan, 540
   U.S. 443, 455 (2004).

United States District Court
For the Northern District of California

have refused to allow organizations to bring certain claims for monetary relief on behalf of their individual members.  See, e.g., SEIU, Local 721 v. County of Riverside, 2011 WL 1599610, at *11 (C.D. Cal.) ("Thus, because Plaintiff seeks damages here, associational standing is precluded insofar as Plaintiff alleges monetary damages.").  It also points to cases where the Ninth Circuit has recognized that organizations seeking only injunctive or declaratory relief typically face a lower bar to associational standing than organizations seeking damages.  See, e.g., Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. Cal., 159 F.3d 1178, 1181 (9th Cir. 1998) ("[T]here can be little doubt that the claims raised by [the plaintiff] do not require the participation of individual members in this action. Individualized proof from the members is not needed where, as here, declaratory and injunctive relief is sought rather than monetary damages.").

None of these cases establishes a rigid rule precluding associational standing in all cases where organizations seek to bring damages claims on behalf of their individual members. Indeed, in United Food, the Supreme Court unanimously held that the third prong of the associational standing test did not bar a union from asserting damages claims on behalf of its members under the Worker Adjustment and Retraining Notification Act.  517 U.S. at 558.  The Court specifically highlighted a "wide variety of other contexts in which a statute, federal rule, or accepted common-law practice permits one person to sue on behalf of another, even where damages are sought."  Id. at 557 (emphasis added).  The Court therefore concluded that the third prong of the

8

**United States District Court**
For the Northern District of California

associational standing test does not create a strict
constitutional prohibition on claims for monetary relief but,
rather, addresses prudential concerns such as "administrative
convenience and efficiency." Id.

The County has not adequately explained how the participation
of SCARE's individual members in this suit would threaten
administrative convenience or efficiency here.  To the extent that
any of SCARE's individual members would have to participate in
this litigation at all -- and it remains unclear whether they
would -- their participation would likely be quite limited given
that SCARE's claims are based almost entirely on local ordinances
and resolutions, each of which applies to a broad swath of
retirees.  The potential limited participation by some members of
SCARE is not sufficient to defeat associational standing.  See,
e.g., Alliance for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l
Dev., 651 F.3d 218, 230 (2d Cir. 2011) ("'The fact that a limited
amount of individuated proof may be necessary does not in itself
preclude associational standing.'" (emphasis added; citations
omitted)), aff'd, 133 S. Ct. 2321 (2013); Pa. Psychiatric Soc. v.
Green Spring Health Servs., Inc., 280 F.3d 278, 286 (3d Cir. 2002)
("If the Pennsylvania Psychiatric Society can establish these
claims with limited individual participation, it would satisfy the
requirements for associational standing." (emphasis added));
Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 603
(7th Cir. 1993) (RCPA) ("We can discern no indication . . . that
the Supreme Court intended to limit representational standing to
cases in which it would not be necessary to take any evidence from
individual members of an association.").

9

United States District Court
For the Northern District of California

In any event, the relief that SCARE seeks here is primarily declarative and injunctive in nature.  In its complaint, it asks for a judicial declaration that the County owes its retirees certain healthcare benefits and an injunction directing the County to provide those benefits.  While this relief would ultimately result in monetary gains for SCARE's individual members, it is still sufficient to support associational standing.  Recently, in a case similar to this one, another court in this district found that an association of retired Contra Costa County employees had associational standing to bring claims for breach of an implied promise to pay healthcare benefits, reasoning that the relief the organization sought was essentially declaratory and injunctive in nature.  Retiree Support Grp. of Contra Costa Cnty. v. Contra Costa Cnty., 944 F. Supp. 2d 799, 805-06 (N.D. Cal. 2013) (rejecting the defendant's argument that "the resolution of [the association]'s claims requires individualized factual inquiries and the participation of individual retirees").  There, the retiree organization alleged that Contra Costa County had "promised the retirees that they would receive retiree health care benefits for themselves and their dependents if they met certain criteria, and that the County would pay for 80% or more of the costs of these benefits for at least one plan for the lifetime of the retirees."  Id. at 801.  When the county sought to cap the retirees' benefits at a flat dollar amount, the organization brought suit seeking "injunctive and declaratory relief that would require the County to fulfill its obligations under the 80% promise."  Id. at 802.  The court found that this was sufficient to satisfy the third prong of the associational standing test.

United States District Court
For the Northern District of California

Id. at 806 ("Because RSG seeks declaratory and injunctive relief, the third factor also is satisfied.").

The Seventh Circuit relied on similar reasoning in RCPA, finding that an association of retired police officers who wanted to prevent the City of Chicago from altering their health plan had associational standing.  7 F.3d at 602-03.  Even though the retirees stood to benefit financially if the association prevailed in the suit, the court nevertheless treated the association's claims as claims for declaratory and injunctive relief.  Id. at 603 ("Declaratory, injunctive, or other prospective relief will usually inure to the benefit of the members actually injured and thus individualized proof of damages is often unnecessary.").  The court expressly rejected the city's argument that the association failed to meet the third prong of the associational standing test. Id. ("Here, the issue is whether the City made certain binding representations with respect to its health care funding obligations.  Recovery would not require that each and every member of the [retired police officers' association] establish that he was the recipient of a misrepresentation by the City or the Police Fund.").  Analogous logic governs here.

Accordingly, SCARE has plead sufficient facts to establish that it has standing to sue on behalf of its individual members. The County's motion to dismiss for lack of subject matter jurisdiction must therefore be denied.

II.  Failure to State a Claim

A.  Legal Standard

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

Civ. P. 8(a).  On a motion under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

B.    Sufficiency of New Board Resolutions

As noted above, SCARE has sought to cure its prior pleading deficiencies by attaching twenty-six new resolutions to its 2AC. The County contends that these resolutions do not plausibly suggest that it entered into any binding contracts containing an implied promise to provide its employees with post-retirement healthcare benefits in perpetuity.  It raises three arguments that merit discussion here.

First, the County points to a 1992 ordinance requiring that any promise of payment to a County employee be made with the "express prior authorization" of the Board of Supervisors. According to the County, this ordinance precludes SCARE from asserting any contract claims based on the existence of an implied promise in any resolutions or MOUs adopted after 1992.  Second, the County asserts that the newly added resolutions only govern

**United States District Court**
For the Northern District of California

the rights of retirees who were represented by a union and, therefore, do not provide any contractual rights to non-union retirees.  Third and finally, the County notes that the new resolutions only date back as far as 1990.  As such, the County argues, they do not create a contractual right to healthcare benefits for any retirees who retired before that date.  Each of these arguments is addressed in turn.

1.    1992 Ordinance

In REAOC II, the California Supreme Court explained that "a county may be bound by an implied contract under California law if there is no legislative prohibition against such arrangements, such as a statute or ordinance."  52 Cal. 4th at 1176 (emphasis added).  The County contends that Ordinance No. 4478, which was enacted in January 1992, provides just such a prohibition on implied contracts.  It specifically cites section 2 of the ordinance, which provides,

> Any purportedly binding promise or representation made by any officer, employee or agent of the County of Sonoma, including other public agencies governed in whole or in part by the Board of Supervisors, that would require the payment of money, performance of service, transfer of any property, real or personal, or the giving of any other thing of value of the County of Sonoma, or other public agencies governed in whole or in part by the Board of Supervisors, where the making of the promise or the representation did not have the express authorization of the Board of Supervisors is, unless otherwise provided by law, unenforceable and void.

United States District Court
For the Northern District of California

Docket No. 78, Def.'s Req. Judicial Notice (RJN), Ex. 1A, at 1 (emphasis added).[3]  The County argues that, under REAOC II, this "express authorization" requirement precludes SCARE from asserting any claims against it based on an implied contract term.  This interpretation of the ordinance is not persuasive.

Section 1 of Ordinance No. 4478 outlines the Board of Supervisors' purpose in adopting the ordinance.  According to that section, the Board adopted the ordinance in furtherance of a general policy "that the decision to obligate public funds and property should be made openly and publicly in accordance with the requirements of the Ralph M. Brown Act, unless otherwise authorized by law."  Def.'s RJN, Ex. 1A, at 1.  This statement of legislative intent suggests that the central purpose of the "express authorization" requirement is to ensure that all of the County's payment obligations are approved by the Board in an open and public setting.  Put differently, the ordinance is supposed to prevent any "officer, employee or agent of the County" from binding the County to any contract without the public's knowledge and without the Board's approval.

Nothing in the ordinance, however, suggests that the Board also intended to require that every "promise or representation" made by the County be conveyed in "express" terms.  Rather, the text of the ordinance itself suggests that it is the Board's authorization of County contracts that must be "express" -- not

---

[3] The County's request for judicial notice of the text of this ordinance is granted.  The ordinance is codified at section 1-11 of the Sonoma County Code of Ordinances, which is available online at: http://library.municode.com/HTML/16331/level1/CH1GEPR.html#CH1GEPR_S1-11OBPUFUPR (last visited Jan. 3, 2014).

United States District Court
For the Northern District of California

the terms of every contract it approves.  Indeed, if the Board sought to preclude implied terms from being read into any contract involving "the payment of money, performance of service, transfer of any property, real or personal, or the giving of any other thing of value of the County of Sonoma," it would raise the cost of contracting with the County considerably.  This was not likely what the Board intended when it adopted Ordinance No. 4478. Accordingly, the County's proposed construction of the ordinance as a broad prohibition against implied contract terms is not tenable.  The ordinance does not bar SCARE from asserting contract claims against the County based on implied promises or representations, as long as those promises or representations were approved by the Board in an open and public setting by means of an ordinance or resolution.

> ## 2.   Non-Union Retirees

In Sonoma III, the Ninth Circuit set forth a two-part test that SCARE must satisfy here to state a valid claim for breach of contract.  It explained that, "in order to survive a motion to dismiss, [SCARE]'s complaint must plausibly allege that the County: (1) entered into a contract that included implied terms providing healthcare benefits to retirees that vested for perpetuity; and (2) created that contract by ordinance or resolution."  708 F.3d at 1115 (citing REAOC II, 52 Cal. 4th at 1185-86).  The court held that some of the MOUs attached to SCARE's prior complaint -- specifically, those in which the County agreed to "make contributions toward a health plan premium for retirees hired after 1990" -- satisfied the first part of this test because they plausibly contained an implied promise to

United States District Court
For the Northern District of California

1  provide post-retirement healthcare benefits in perpetuity.  <u>Id.</u> at

2  1116 ("The MOUs submitted with the amended complaint support the

3  Association's allegation that the MOUs promised healthcare

4  benefits.").  However, the complaint failed to satisfy the second

5  part of the test because it did not identify any specific

6  ordinances or resolutions that plausibly ratified these MOUs.[4]

7  <u>Id.</u> at 1117 ("Given <u>REAOC II</u>'s focus on the statutory requirement

8  that compensation of county employees must be addressed in an

9  ordinance or resolution, the complaint's passing references to

10  Board ratification are an insufficient basis for a court to infer

11  that the County enacted a resolution or ordinance that ratified

12  the relevant MOUs." (citations omitted)).

13      The twenty-six resolutions that SCARE has added to its 2AC

14  solve this problem because they contain language expressly

15  adopting the MOUs highlighted in the Ninth Circuit's opinion.  <u>See</u>

16  2AC, Exs. 69-94.  However, the MOUs themselves are limited in

17  scope because they only govern agreements between the County and

18  local unions; the MOUs do not promise any benefits to the County's

19  non-union employees.  Although SCARE argues that the other

20  resolutions and ordinances attached to its 2AC show that the

21  County made similar promises to non-union employees, <u>see</u> Docket

22  No. 81, Pl.'s Opp. at 9-10, the Ninth Circuit's opinion in <u>Sonoma</u>

23  <u>III</u> precludes this argument.  Citing the standard set forth in

24

25

_____

26      [4] This distinguishes the present case from <u>Contra Costa</u>, 944 F.
   Supp. 2d at 804, which SCARE cites for support.  In that case, the court
27  applied the two-part test set forth in <u>Sonoma III</u> and specifically
   concluded that the plaintiff's complaint "meets both of these
28  requirements."  <u>Id.</u>

REAOC II to satisfy the second part of the test outlined above, the Sonoma III court explained that

> the County's resolutions and ordinances may create a contract if the text and the circumstances of their passage "clearly evince" an intent to grant vested benefits, or if they "contain[] an unambiguous element of exchange of consideration by a private party for consideration offered by the state."  In the alternative, the County's intent to make a contract by legislation "is clearly shown" when a resolution or ordinance ratifies or approves the contract.
>
> But here the amended complaint does not plausibly allege either alternative.

708 F.3d at 1117 (citing REAOC II, 52 Cal. 4th at 1186-87).  The court noted that SCARE's complaint was not "sufficient to establish that the resolutions, ordinances, and MOUs were the product of a bargained-for exchange of consideration."  Id.  In addition, it found that SCARE "did not allege that the Board ratified the MOUs by resolution or ordinance" and failed to "submit copies of any such resolutions or ordinances with the amended complaint."  Id.  Accordingly, it held that the "district court did not err in concluding that the amended complaint failed to state a cause of action on this issue."  Id.

In light of the Ninth Circuit's conclusion that SCARE's earlier complaint -- including the attachments thereto -- was not sufficient to state a claim, SCARE cannot now rely on the resolutions and ordinances attached to that complaint to establish the contractual rights of non-union employees.[5]  Thus, while SCARE

_____

[5] At oral argument, SCARE emphasized that the Ninth Circuit's opinion in this case "doesn't draw any distinctions between union and nonunion employees."  Docket No. 93, July 11, 2013 Hrg. Tr. 7:14-:16.  The Ninth Circuit, however, had no reason to draw such distinctions

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   may proceed on its claims based on the alleged contractual rights

2   of the union employees identified in the MOUs, it may not proceed

3   on any claims based on the alleged contractual rights of non-union

4   employees.

5                   3.    Employees Retired Before 1990

6        The County argues that SCARE has failed to demonstrate that a

7   contractual right to healthcare benefits exists for employees who

8   retired prior to 1990.  The earliest MOU enacted by resolution

9   went into effect in 1990.  SCARE's complaint asserts that retirees

10  performed services as employees in exchange for the County's

11  promise to pay their benefits after retirement.  The County argues

12  that, under this theory, there is no bargained for exchange of

13  consideration to support a contract claim for the pre-1990

14  retirees, because they did not work after the resolution went into

15  effect.  The Court agrees.  SCARE has only plausibly stated a

16  claim for retirees who worked under the post-1989 MOUs.  Thus,

17  SCARE may not proceed on any claims based on the alleged

18  contractual rights of employees who retired before 1990.

19       Because SCARE has not added any new resolutions to its 2AC

20  that were enacted before 1990, its theory of contract formation

21  based on the alleged 1985 "tie agreement" must be rejected.

22  Sonoma III made clear that, in order to state a valid claim based

23  on an implied contract to provide healthcare benefits, SCARE would

24  ────────────────────────

25  because, as noted above, SCARE's complaint failed to meet the threshold
    requirement of identifying a resolution or ordinance adopting the

26  relevant MOUs.  In short, the court had no reason to delineate the
    precise scope of the MOUs because SCARE did not adequately allege that

27  the Board actually adopted those MOUs.  In any event, the Ninth
    Circuit's failure to distinguish between union and non-union employees

28  does not provide grounds for ignoring the plain language of the MOUs,
    which is directed unequivocally at union employees.

have to amend its complaint to identify a specific ordinance or resolution creating that contract.  708 F.3d at 1115.  It failed to do so here with respect to the alleged 1985 "tie agreement."

4.   The County's Remaining Arguments

The County's remaining arguments focus on SCARE's promissory estoppel claims and are largely derivative of its assertion that SCARE has failed to establish the existence of an enforceable contract to provide post-retirement healthcare benefits.  In essence, the County contends that SCARE's failure to identify a binding implied promise to provide healthcare benefits in perpetuity dooms its promissory estoppel claims in addition to its contract claims.  Because the Court concludes, however, that SCARE has adequately alleged the existence of such a promise with respect to union retirees hired after 1990, the County's arguments with respect to SCARE's promissory estoppel claims must be rejected with respect to those retirees.

The County also contends that the anti-vesting language of section 31692 of the California Government Code bars SCARE's contract-based claims.  That provision states that the "adoption of an ordinance or resolution pursuant to Section 31691 shall give no vested right to any member or retired member,[6] and the board of supervisors or the governing body of the district may amend or repeal the ordinance or resolution at any time."  Cal. Gov't Code. § 31692.  Section 31691 provides that a county board of supervisors

---

[6] In this context, "member" means any county employee participating in an insurance plan.

**United States District Court**
For the Northern District of California

> may provide for the contribution by the county or
> district from its funds and not from the
> retirement fund, toward the payment of all or a
> portion of the premiums on a policy or certificate
> of life insurance or disability insurance issued
> by an admitted insurer, or toward the payment of
> all or part of the consideration for any hospital
> service or medical service corporation . . .
> contract, or for any combination thereof, for the
> benefit of any member heretofore or hereafter
> retired or his or her dependents.

Cal. Gov't Code § 31691(a).  These provisions do not bar SCARE's claims here because, as both REAOC II and Contra Costa explained, "the 'precise relationship' between the services mentioned in section 31691 and retiree health benefits is unclear."  Contra Costa, 944 F. Supp. 2d at 805 (citing REAOC II, 52 Cal. 4th at 1191).  This is one of the main reasons why neither of these courts considered section 31692 to be a bar to the retirees' contract claims in those cases.  Id.; REAOC II, 52 Cal. 4th at 1194 (concluding, after examining section 31692, that "a vested right to health benefits for retired county employees can be implied under certain circumstances from a county ordinance or resolution").  The County does not attempt to distinguish either of these cases in its briefs.  Thus, "the County's argument that [the association]'s claims are barred by Section 31692 is unavailing."  Contra Costa, 944 F. Supp. 2d at 805.

CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss (Docket No. 77) is GRANTED in part and DENIED in part. Plaintiff may proceed on all of its claims based on promises that are allegedly implied in the MOUs that the Board of Supervisors ratified in the resolutions attached as Exhibits 69 through 94 of the 2AC.  Plaintiff may not, however, proceed on any claims based

20

on promises that were allegedly implied in the other MOUs attached to its 2AC.  This includes any claims based on the alleged 1985 "tie agreement."

Defendant's motion to file a statement of recent decision (Docket No. 87) is GRANTED.

Defendant shall file its answer within fourteen days of this order.  Pursuant to the parties' stipulation, Docket No. 94, Plaintiff shall file its dispositive motion 224 days after Defendant files its answer.  Defendant shall file its opposition and any cross-motion, contained in a single twenty-five page brief, twenty-eight days thereafter.  Plaintiff shall file its reply fourteen days after Defendant files its cross-motion and opposition.  Defendant shall file its reply to any cross-motion fourteen days after Plaintiff files its reply.

IT IS SO ORDERED.

Dated: 04/23/2015

CLAUDIA WILKEN
*United States District Judge*